### DAVISON *v.* McWHORTER.

As the only evidence tending to establish the amount of the plaintiff's demand was a writing upon which he relied as constituting an admission by the defendant of liability for the sum sued for, and as the latter met this evidence with an explanation which, if true, completely overcame its force and effect, a finding in his favor was fully warranted.

Submitted May 1,—Decided July 18, 1902.

Certiorari.   Before Judge Hart.   Greene superior court.   September 10, 1901.

*James Davison*, for plaintiff.
*Hamilton McWhorter*, for defendant.

LUMPKIN, P. J.   A suit for $19 was instituted in a justice's court by Davison against McWhorter, the action being based on a contract signed by the latter, of which the following is a copy: " Greenesboro, Ga., Sept. 28, 1897.   I hereby promise to pay Jas. Davison, or bearer, the sum that shall become due Gilbert Champion for labor performed for me, to the amount of $25.00, said sum being due said Jas. Davison by said Champion for services in the cases of the State *vs.* Gilbert Champion, charged with ' escape' and with ' aiding to escape.'   This promise is limited to the amount of my indebtedness to Gilbert Champion."   On a trial before a jury in the magistrate's court, the plaintiff introduced in evidence the contract sued on, and also a " written statement admitted by defendant to have been given Gilbert Champion," which purported to show how accounts stood between them.   In this statement, Champion was charged with $35.67, and credited with $26.66, as his " wages to April 10 – 98."   Upon this evidence the plaintiff rested his case. The defendant, as a witness in his own behalf, testified, in substance, as follows: The understanding was that he was to take Champion " and work him, and try to help Mr. Davison get his money."   Champion worked for McWhorter from September to the end of the year

1897, at $5 per month, and at Christmas he owed Champion $6 "on settlement," which amount was paid to Davison. On April 10, 1898, Champion "quit work." The item of $26.66, with which he was credited in the above-mentioned statement of account, represented "his wages from Jany. 1st to April 10th," 1898. He "lost a great deal of time, which is charged in the account against him, as shown in the statement given him. Sometimes he lost as many as twelve days at once, which is charged to him in the account at the rate of 40 c. per day. The balance of his account is for supplies furnished and medical bills paid for him while he was sick. His wages did not amount to as much as the account he made while working for" the defendant, and for this reason the latter declined to pay the plaintiff's demand.

This testimony on the part of the defendant was corroborated by a witness sworn in his behalf, who testified "that, as superintendent for Maj. McWhorter, he was familiar with his business at the time Gilbert Champion was there, and that said Champion lost a great deal of time from sickness and otherwise — as much as twelve days at a time, — which was charged to Champion at the rate of 40 c. per day." The plaintiff then offered himself as a witness, and testified in rebuttal as follows: "Maj. McWhorter took Gilbert Champion, whom I had defended in two cases, to work him and pay me my fee. If the negro had left before he worked any, I did not expect Maj. McWhorter to pay me anything; but our contract was that Maj. McWhorter was to pay me whatever amount the negro's wages came to, and this is what was intended to be expressed in the contract sued on. I was entitled to the negro's services; and if I had understood that Maj. McWhorter should make these advances to Gilbert Champion without consulting me, I never would have put Champion to work with him. Maj. McWhorter made these advances to the negro without my knowledge or sanction." The trial in the justice's court resulted in a finding in favor of the defendant, and Davison presented to the superior court a petition for certiorari, in which he complained that the verdict was contrary to law and the evidence, "because, under the undisputed evidence, defendant became indebted to Gilbert Champion, during the time specified by the contract sued on, for even more than $25.00, and this made the defendant liable to plaintiff regardless of whether or not Gilbert Champion was indebted to defendant at

the same time, said contract not specifying or referring to any net balance which might be due Gilbert Champion on settlement between defendant and said Champion." The petition for certiorari was overruled, and Davison excepted.

Giving to the contract sued on the construction which he places upon it, we are satisfied he made out a prima facie case by introducing in evidence this contract and the statement of account which the defendant admitted he had made out and given to Champion. This is so for the reason that this statement purported to be an admission on the part of McWhorter that the wages earned by Champion up to April 10, 1898, amounted to $26.66. But this seeming admission against interest was open to explanation by McWhorter, and he successfully overcame it by his testimony to the effect that he had credited Champion with the full amount of wages he would have earned had he worked continuously from January 1, 1898, to April 10 of that year, and that in the account rendered against him, amounting to $35.67, he had been charged, at the rate of forty cents per day, with the time he had lost on account of sickness, etc. McWhorter did not, it is true, undertake to say how much time Champion had lost, or when he was absent from work, or upon what basis the settlement between them at Christmas, 1897, was had. On the contrary, all that McWhorter endeavored by his testimony to show was that, in point of fact, the item of $26.66 with which Champion was credited in the statement of account furnished him did not correctly represent the amount of money actually earned by him as wages up to April 10, 1898. This was all it was necessary for McWhorter to establish in order to destroy the evidentiary value of the writing upon which the plaintiff relied as constituting an admission that, on the date last mentioned, the former owed to Champion, for work performed by him, the sum of $26.66. Without the aid of such an admission, no case was made out which entitled the plaintiff to recover any specified amount; for he made no attempt to prove for what length of time Champion actually worked or what compensation he was to receive for his services. The jury, as they had a right to do, accepted as true the explanation offered by McWhorter as to how he came to credit Champion with an amount which he had not actually earned as wages. The defendant's testimony fully warranted a finding that Champion had earned a much larger sum than $6, the amount paid

over to Davison; but there was no evidence before the jury as to this matter which would have authorized them to return a verdict in his favor for any definite sum. He simply failed to show, otherwise than by the paper relied on by him as an admission but which the jury declined to regard as such, that McWhorter owed him the amount for which he brought suit, or any other specific amount. The burden was on him to prove his alleged claim. He might have succeeded in doing so by a proper cross-examination of McWhorter while he was on the stand as a witness. No attempt to have him state explicitly how much Champion actually earned as wages appears to have been made, however; nor was the latter introduced as a witness, or any testimony offered for the purpose of establishing the real truth in regard to this very important matter. This being so, Davison is clearly not in a position where he can justly complain, either that the jury in the magistrate's court did not return a verdict in his favor, or that the judge of the superior court differed with him in opinion as to the merits of his petition for certiorari.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*